**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| MARQUISE ROBBINS, | * | |
| | * | |
| | * | CIVIL ACTION NO.: |
| Plaintiff, | * | 5:13-CV-348-CAR-CHW |
| v. | * | |
| | * | |
| SHELIA OUBRE, KEITH CARTER, | * | |
| A. DAVIS, and SABRENA GRANT, | * | |
| | * | |
| | * | |
| Defendants. | * | |

## DEFENDANTS' BRIEF IN SUPPORT
## PRE-ANSWER MOTION TO DISMISS

COME NOW, Defendants Shelia Oubre, Keith Carter, and Cager Davis[1],

pursuant to Rule 12 of the Federal Rules of Civil Procedure, by and through the

Attorney General for the State of Georgia, and respectfully submit this, their Pre-

Answer Motion to Dismiss and Brief in Support. Defendants' motion seeks

dismissal of Plaintiff's Complaint, based on his failure to state a claim. In support

of their motion, Defendants show the Court as follows:

---

[1] Subsequent to the filing of the Complaint, it was determined that A. Davis, Correctional
Officer, Badge #2808 is Cager Davis.

## I. PROCEDURAL HISTORY & ALLEGATIONS

Plaintiff, Marquise Robbins, an inmate, filed the instant Complaint, pursuant to 42 U.S.C. § 1983, alleging that officers at Baldwin State Prison failed to protect him from other inmates, in violation of his rights under the Eighth Amendment to the United States Constitution. (Doc. 1). The Magistrate Judge screened Plaintiff's Complaint, pursuant to 28 U.S.C. § 1915A(a) and found that Plaintiff's claims against Oubre, Carter and Davis could proceed. (Doc. 6).

In his Complaint, Plaintiff avers that on September 1, 2012, while housed in Building G of Dorm 2 at Baldwin State Prison, Officers Carter and Davis failed to protect him from an assault by a group of other inmates. (Doc. 1 at 5). According to Plaintiff, during the attack he was beaten about his face and body, and was sexually assaulted. (Id.).

Plaintiff contends that he attempted to warn Officers Carter and Davis, the duty officers assigned to his dorm, that he was in fear, but nothing was done. (Id. at 7). To be sure, Plaintiff argues that, on the day that he was attacked, he "felt a bad vibe and ran to the exit doorway and started to bang on the plexiglass door screaming for help." (Id.). Plaintiff alleges that the duty officers sit in the middle area of the four dorms where the G-building comes together and the only way for an officer to know that there is trouble on the floor is to bang on the door for help. (Id.). Plaintiff also alleges that Officers Davis and Carter are aware that this is the

practice, and that there is a history of violence among inmates housed in Dorm 2. (Id.). After trying to get assistance, Plaintiff was grabbed from behind by a gang of inmates who took him to an upper level bathroom and attacked him. (Id. at 7-8).

Plaintiff alleges that the attack lasted about 30 minutes to an hour, and neither officer made rounds during that time. (Id. at 8). Plaintiff claims that, after the attack, he was told to shower, was given new clothes, and then escorted to the exit of Dorm 2. (Id.). Once out of the dorm, he was placed in a storage closet by Officers Davis and Carter until Plaintiff was escorted to medical by Lt. Stanley. (Id.).

Robbins asserts that he filed a grievance with Warden Oubre about the attack, and was told that the charges could not be substantiated and that his grievance was closed. (Id. at 9). In addition, he contends that Oubre is aware of risk to the inmates housed in Building G because of the items recovered during shakedowns—cell phones, knives, and other contraband; however, no steps to implement any surveillance have been taken. (Id.). Plaintiff contends that Oubre's failure to take any action regarding the issues in Building G has resulted in the inmates controlling the dorm. (Id). Plaintiff contends that, at all times, Defendants were acting under color of state law. (Id. at 10).

# I.   ARGUMENT AND CITATION OF AUTHORITY

## A.   The Complaint Fails To State A Claim.

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint is subject to dismissal if it does not state a claim upon which relief can be granted.  In order to withstand a motion to dismiss, a complaint alleging a § 1983 action must plead facts that establish a deprivation of a constitutional right and that a specific defendant caused that deprivation. Holmes v. Crosby, 418 F.3d 1256, 1258 (11th Cir. 2005).  Conclusory allegations are insufficient for this purpose. Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 1950 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 565-56 (2007).  When considering a motion to dismiss, after separating the conclusory allegations from well-pleaded factual allegations, the court should assume any remaining well-pleaded facts to be true and "determine whether they plausibly give rise to an entitlement of relief." Id. at 1949-50.  The facts necessary to meet the plausibility standard will depend on the constitutional provision at issue. Id. at 1948. But, the standard always requires "more than a sheer possibility that a defendant has acted unlawfully." Id. at 1950. Importantly, if the well-pleaded allegations are consistent with lawful behavior, the complaint must be dismissed.  Twombly, 550 U.S. at 570.

Here, Plaintiff's Complaint fails to allege sufficient facts to state a plausible claim for relief under 42 U.S.C. § 1983 against Defendants. The Eighth

Amendment governs the conditions of a prisoner's confinement. <u>Helling v. McKinney</u>, 509 U.S. 25, 31 (1993). It prohibits punishments which are incompatible with "the evolving standards of decency that mark the progress of a maturing society." <u>Estelle v. Gamble</u>, 429 U.S. 97, 102-03 (1976). <u>See also</u> <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994) (although the Constitution does not require comfortable prisons, it does not permit inhumane ones). Only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment by the Eighth Amendment. <u>Hudson v. McMillian</u>, 503 U.S. 1, 5 (1992). Conditions of confinement are cruel and unusual when they involve the "serious deprivation of basic human needs" and are "totally without penological justification." <u>Rhodes v. Chapman</u>, 452 U.S. 337, 346-47 (1981). Crucial to showing an "unnecessary and wanton infliction of pain" argument is evidence that the official acted with specific intent. <u>Whitley v. Albers</u>, 475 U.S. 312, 319-21 (1986); <u>Campbell v. Sikes</u>, 169 F.3d 1353, 1362-63 (11th Cir. 1999) (holding that the exact nature of the specific intent required depends on the type of claim at issue). Wantonness has been defined as "deliberate indifference to a substantial risk of serious harm to a prisoner." <u>Farmer</u>, 511 U.S. at 836.

"To establish 'deliberate indifference,' Plaintiff must show that a Defendant had '(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence.'" <u>Burnette v. Taylor</u> , 533 F.3d

1325, 1330 (11th Cir. )(*quoting* <u>Bozeman v. Orum</u>, 422 F.3d 1265, 1272 (11th Cir. 2005)).

The Eighth Amendment prohibits the infliction of cruel and unusual punishment. U. S. Const. amend. VIII. In context of a failure to protect claim, only a "prison official's 'deliberate indifference' to a 'substantial risk of serious harm violates the Eighth Amendment.'" <u>Farmer v. Brennan</u>, 511 U.S. 825, 828, 114 S. Ct. 1970, 1974 (1994)(citations omitted). And while prison officials have a "duty . . . to protect prisoners from violence at the hands of other prisoners," <u>Id.</u> at 833, not "every injury suffered by one inmate at the hands of another…translates into a constitutional liability." <u>Id.</u> at 834. Rather, to establish an Eighth Amendment violation, a plaintiff must show that there was "a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not 'respond[] reasonably to the risk.'" <u>Marsh v. Butler County, Ala.</u>, 268 F.3d 1014, 1028 (11th Cir. 2001)(*en banc*)(quoting *Farmer*, 511 U.S. at 844). A prison official must know and disregard "an excessive risk to inmate health and safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Farmer</u> at 837. Only individual defendants who actually possess such knowledge can be liable for deliberate indifference. <u>Bugge v. Roberts</u>, 430 F. App'x 753, 758 (11th Cir. 2011). As the Eleventh Circuit has noted,

> Although negligence can produce tragic results, it is not actionable as a violation of the Eighth Amendment: "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment."

Jenkins v. DeKalb County, Ga., 307 F. App'x 390, 394 (11th Cir. Jan. 15, 2009)(*citing* Farmer, 511 U.S. at 838).

In addition, the risk actually known to the individual defendant "must be a strong likelihood, rather than a mere possibility before [a defendant's] failure to act can constitute deliberate indifference." Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990)(citations omitted). The risk of harm must be "so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004). The determination of whether a prison official acted with deliberate indifference must be based upon facts known to him at the time of incident. The Eleventh Circuit has admonished that "[it] will not allow the advantage of hindsight to determine whether conditions of confinement amounted to cruel and unusual punishment." Purcell ex rel. Estate of Morgan v. Toombs County, Ga., 400 F. 3d 1313, 1320 (11th Cir. 2005).

Finally, Subjective knowledge cannot be ascribed to Defendants unless they were aware of a "particularized threat or fear felt by [Plaintiff]. Carter v. Galloway, 352 F.3d 1346, 1347 n.1 (11th Cir. 2003)(*citing* Robinson v. California, 370 U.S.

600 (1962). Moreover, "[t]he known risk of injury must be a strong likelihood, rather than a mere possibility before a guard's failure to act can constitute deliberate indifference." Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990) (citations and internal quotations omitted). Proof that the defendants should have perceived the risk, but did not, is insufficient. Farmer, 511 U.S. at 837; *and see* Cottrell v. Caldwell, 85 F. 3d 1480, 1491 (11th Cir. 1996)(There is no liability for an 'an official's failure to alleviate a significant risk that he should have perceived but did not . . .'" (*quoting* Farmer, 511 U.S. at 838.)).

In Carter v. Galloway , an inmate asserted a claim of deliberate indifference after prison officials failed to protect him from an attack by his cellmate. See id. at 1348. In affirming the grant of summary judgment for the officials, the Eleventh Circuit acknowledged that (1) the officials knew that the plaintiff's cellmate was a "problem inmate," who had a well-documented history of prison disobedience and violence; and (2) the plaintiff had notified the officials that his cellmate was acting crazy, including roaming his cell like a "caged animal." *Id.* at 1349. The Eleventh Circuit, however, explained that before a defendant's awareness rises to a sufficient level of culpability, there must be much more than mere awareness of an inmate's generally problematic nature. Id. Thus, the Eleventh Circuit concluded that, although the defendants arguably should have placed the plaintiff elsewhere,

their "merely negligent failure to protect" him from the attack did not justify liability under § 1983. Id. at 1350.

Recently the Eleventh Circuit affirmed this principle in Goodman v. Kimbrough, 718 F.3d 1325 (11th Cir. 2013). As explained below, Goodman makes clear that, absent allegation (and ultimately proof) of knowledge that an assault was occurring and failure to act in response, there is no deliberate indifference claim.

Goodman involved an Eighth Amendment deliberate indifference claim based on jail officers' alleged failure to protect the plaintiff from an assault by his cellmate. Of particular import in this case, the Court stressed that deliberate indifference requires actual knowledge of a substantial risk of harm and a failure to act with such knowledge -- and negligence, even gross negligence, is not sufficient under this standard. See id., *11-17. The Court said that the plaintiff cannot make out his claim on the theory of "Well, they should have known." 2013 U.S. App. LEXIS 12740, *16-17.

The plaintiff in Goodman was severely beaten by his jail cellmate during a night shift. There was evidence that the defendant officers failed to perform two shift "head counts" (which involved entering the cells and physically looking at the inmates at 6 p.m. and midnight each night) and also failed to perform hourly "cell

checks" (which involved walking by each cell and looking into the window once per hour after midnight), both of which were required by jail policy. See id., * 3. There also was evidence that another inmate in the unit had pushed the emergency call button in his cell several times during the night in question in an effort to notify officers that he heard a fight going on in Goodman's cell. The officers admitted that, contrary to jail policy, they had deactivated that inmate's call button without investigating the reason the buttons had been pressed because they believed he was pushing the button so that he could request free time to use the telephone. See id., * 5-6, 12. There also was evidence that three other inmates in the unit heard sounds of violence emanating from Goodman's cell, and also evidence that one of the defendant officers took two lunch breaks and another long break on the night of the attack. See id., * 6, 12. Because of the officers' conduct they did not learn of the assault until the next morning. See id.

The Court acknowledged that the officers' "dereliction of duty . . . facilitated" the inmate beating, see id., * 18, but held that at most such conduct amounted to negligence or gross negligence. See id., *12-19. In order to show deliberate indifference the plaintiff needed evidence that the officers actually knew that an assault was occurring and with such knowledge failed to respond reasonably to stop the assault. See id., * 13. The Court said:

In our view, the problem with this case is that no evidence presented would support a reasonable jury's finding that [the officers] harbored a subjective awareness that Goodman was in serious danger while in his cell on the night of September 9-10, 2008. The failure to conduct the cell checks and head counts is negligence of the purest form; it is of no value in answering the key question here—namely, whether [the officers] knew of a substantial risk of serious harm to Goodman. The deactivation of the emergency call buttons is more egregious, but here too we find evidence of negligence—perhaps gross negligence—but nothing indicating that the officers knew Goodman was in danger and, equipped with that knowledge, deliberately disregarded the risk.

See id., * 12-13 (*emphasis in original*).

Because there was no evidence that the officers had actual knowledge of the assault and failed to act with such knowledge, the Court affirmed the trial court's entry of summary judgment for the officers. See id., * 16-18.

Here, Plaintiff fails to allege sufficient facts to establish a claim of deliberate indifference against Defendants Carter and Davis. As pled by Plaintiff, on the day that he was attacked, he "felt a bad vibe and ran to the exit doorway and started to bang on the plexiglass door screaming for help." (Doc. 1). Defendants Carter and Davis were in the control room and Plaintiff attempted to warn them that he was in fear, but nothing was done. (Id.). Plaintiff also alleges that Officers Davis and Carter are aware that it is the practice of inmates to bang on the doors to get the attention of the officers, and that there is a history of violence among inmates housed in Dorm 2. (Id.).

Plaintiff's conclusory allegation that Defendants Carter and Davis are liable because they should have heard him and responded when he banged on the doors does not state a claim for failure to protect. Plaintiff's allegations fall short of the notice necessary to establish that Defendants had subjective knowledge of any risk of serious harm. Carter, 352 F.3d at 1350; Goodman, 718 F.3d. at *12-19. Plaintiff does not allege that he had previously informed either Davis or Carter that he was in danger of being attacked. (Doc. 1). In fact, Plaintiff's allegations are only that, on the day he was attacked, immediately prior to the attack, he "felt a bad vibe" and then began banging the plexiglass for help. (Id.). In addition, Plaintiff does not allege that Defendants Davis and Carter were at their post, or that they were actually aware that he was in danger on a particular day or time. Further, even assuming that Carter and Davis were generally aware of the ongoing problems with the inmates in the dorm, "mere awareness of [inmates'] generally problematic nature" is insufficient grounding to support a claim of deliberate indifference. Carter, 352 F.3d at 1349. Plaintiff fails to allege sufficient facts against Defendants Davis and Carter. Carter, 352 F.3d at 1350; Goodman, 718 F.3d. at *12-19. These claims should be dismissed.

Likewise, Plaintiff fails to allege sufficient facts to support his claim that Defendant Oubre was deliberately indifferent to his safety. Robbins contends that Oubre is aware of risk to the inmates housed in Building G because of the items

recovered during shakedowns—cell phones, knives, and other contraband; however, no steps to implement any surveillance have been taken. (Doc. 1). Plaintiff's general allegation that Defendant Oubre was are of the risk to inmates because of items recovered during shakedowns alleges nothing more a "mere awareness" of inmates' "generally problematic nature," which, even if taken as true, does not support a claim for liability. Carter, 352 F.3d at 1349. Rather, the pleadings make clear that Defendant Oubre can merely be ascribed as having some knowledge of past inmate violence.

## B. Defendants Are Entitled To Qualified Immunity.

Qualified immunity protects governmental defendants sued in their individual capacities so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In the qualified immunity analysis, the relevant question to be answered is the "objective (albeit fact specific) question," of whether a "reasonable officer" would have believed the defendant's action to be lawful in light of clearly established law and the information possessed by the defendant. Anderson v. Creighton, 483 U.S. 635, 641 (1987). To avail of the immunity, a defendant must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. Vinyard v.

<u>Wilson</u>, 311 F.3d 1340, 1346 (11th Cir. 2002). Once this showing is made, the burden shifts to the plaintiff to show that the law was clearly established. <u>Id.</u>

When determining whether a defendant was engaged in a discretionary act, the question that must be answered is whether he was pursuing a legitimate job-related goal through means that were within his power. <u>Holloman v. Harland</u>, 370 F.3d 1252, 1266 (11th Cir. 2004). The inquiry looks to whether the act is reasonably related to "the outer perimeter of an official's discretionary duties." <u>Harbert Int'l, Inc. v. James</u>, 157 F.3d 1271, 1282 (11th Cir. 1998) (*quoting* <u>In re Allen</u>, 106 F.3d 582, 594 (4th Cir. 1997)).

In this case, all of the alleged acts occurred within the context of Defendants' alleged job functions at a state prison and were reasonably related to their discretionary duties. Indeed, the complaint alleges Defendants were performing their duties as such when the alleged failures to act occurred. (Doc. 1). Thus, the burden shifts to Plaintiff to establish a violation of a clearly established constitutional right. This he cannot do. To defeat qualified immunity based on a claimed violation of a clearly established constitutional right, a plaintiff must point to sufficient facts to show that a constitutional violation occurred. <u>Iqbal</u>, 129 S. Ct. at 1954. As noted, *supra*, Plaintiff cannot meet this burden.

**C.** **Money Damages Are Barred For Official Capacity Claims.**

To the extent Plaintiff is seeking money damages against Defendants in their official capacities his action is barred by the Eleventh Amendment to the United States Constitution. <u>Kentucky v. Graham</u>, 473 U.S. 159, 169(1985). "[T]he principle of sovereign immunity is a constitutional limitation on the federal judicial power established in Art. III." <u>Pennhurst State Sch. & Hosp. v. Halderman</u>, 465 U.S. 89, 98 (1984). "The general test for determining whether the state is the real party in interest, even though it is not a named defendant, is whether the relief sought against the nominal defendant would in fact operate against the state. . ." <u>Jackson v. Georgia D.O.T.</u>, 16 F.3d 1573, 1577 (11th Cir. 1994) *citing,* <u>Pennhurst</u>, 465 U.S. at 101 and n. 11. Since a judgment for monetary damages against Defendants in their official capacities would operate against the state, it is barred by the Eleventh Amendment.

The Supreme Court has held that in order to override the Eleventh Amendment, Congress must do so with "an unequivocal expression of congressional intent to 'overturn the constitutionally guaranteed immunity of the several States.'" <u>Pennhurst</u>, 465 U.S. at 99 (*quoting,* <u>Quern v. Jordan</u>, 440 U.S. 332, 342 (1979)). The Court has repeatedly held that "§1983 does not override a State's Eleventh Amendment immunity." <u>Will v. Mich. Dep't of State Police</u>, 491

U.S. 58, 63 (1989); Quern v. Jordan, 440 U.S. at 342; Kentucky v. Graham, 473 U.S. at 169 n. 17.

The State of Georgia has not consented to being sued under 42 U.S.C. § 1983. In order to evidence such consent, there must be an "unequivocal indication that the State intends to consent to federal jurisdiction that otherwise would be barred by the Eleventh Amendment." Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 238 n.1(1985). The State of Georgia has specifically preserved its sovereign immunity in the state constitution as the Georgia Constitution provides that "[n]o waiver of sovereign immunity . . . shall be construed as a waiver of any immunity provided to the state or its departments, agencies, officers, or employees by the United States Constitution." Ga. Const. Art. 1, Sec. II, Par. IX(f). Georgia has thus not waived its immunity and Plaintiff's claims for money damages against Defendants in their official capacities are barred by the Eleventh Amendment.

**E.     Defendants Cannot Be Sued In Their Official Capacities**

Plaintiff brought this suit pursuant to 42 U.S.C. § 1983, which provides a cause of action for violations of federal constitutional or statutory rights by any "person" acting under color of law. The Supreme Court has ruled that the term "person" in this context is to be given its ordinary meaning; "a State is not a 'person' within the meaning of § 1983." Will, 491 U.S. at 65, 109 S. Ct. at 2309. Furthermore, the Supreme Court has explained that the definition of a "State"

includes State agencies and individual state officers sued in their official capacity. Id. at 70, 71, 109 S. Ct. at 2312. Therefore, to the extent Plaintiff seeks to bring § 1983 claims against Defendants in their official capacities, his claims should be dismissed.

## III. CONCLUSION

For the above and foregoing reasons, Defendants respectfully request this Court to dismiss Plaintiff's Complaint in its entirety.

Respectfully submitted this 18th day of December, 2013.

SAMUEL S. OLENS 551540
Attorney General

KATHLEEN M. PACIOUS 558555
Deputy Attorney General

/s/ Devon Orland
DEVON ORLAND 554301
Senior Assistant Attorney General

/s/ Elizabeth M. Crowder
ELIZABETH M. CROWDER    100809
Assistant Attorney General

Please Address All
Communications To:

ELIZABETH M. CROWDER
Assistant Attorney General
40 Capitol Square, S.W.
Atlanta, Georgia 30334-1300
Telephone: (404) 463-8850
Facsimile:  (404) 651-5304
Email: ecrowder@law.ga.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on December 18th, 2013, I electronically filed the foregoing **DEFENDANTS' BRIEF IN SUPPORT OF PRE-ANSWER MOTION TO DISMISS** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

NONE

I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

Marquise Robbins
GDC ID 1000413667
Baldwin State Prison
PO Box 218
Hardwick, GA  31034

/s/ Elizabeth M. Crowder
Georgia Bar No.: 100809
Assistant Attorney General

Please Address All
Communications To:
ELIZABETH M. CROWDER
40 Capitol Square, S.W.
Atlanta, Georgia 30334-1300
Telephone: (404) 463-8850
Facsimile:  (404) 651-5304
Email: ecrowder@law.ga.gov